1   **WO**

2

3

4

5

6            **IN THE UNITED STATES DISTRICT COURT**

7              **FOR THE DISTRICT OF ARIZONA**

8

9   DLC DermaCare LLC, an Arizona      )   No. CV-10-333-PHX-DGC
    limited liability company,         )
10                                      )   **ORDER**
                  Plaintiff,            )
11                                      )
    vs.                                 )
12                                      )
    Sixta Castillo, R.N., et al.,       )
13                                      )
                  Defendants.           )
14  _____   )

15          DLC DermaCare LLC began franchising dermatology clinics in 2004.  It brought

16  suit against numerous franchisees, their spouses, and certain other defendants in early 2010.

17  The complaint asserts claims for breach of contract, breach of the covenant of good faith and

18  fair dealing, misappropriation of trade secrets, trademark and service mark infringement,

19  unfair competition, tortious interference with contract, and civil conspiracy.  Doc. 1.

20          Defendant Kudlip Thusu has filed a motion to dismiss pursuant to Rules 12(b)(5) and

21  (6) of the Federal Rules of Civil Procedure.  Doc. 107.  Defendant Raman Verma has joined

22  that motion to the extent it seeks dismissal under Rule 12(b)(6).  Doc. 133.  Defendants

23  Susan Feng, Amir Hussain (Amir Farooqui), Irum Hussain, David Minozzi, Juan Castillo-

24  Plaza, Sixta Castillo, and Michelle Barnes have filed a motion to dismiss pursuant to Rule

25  12(b)(6).  Doc. 134.   The motions are fully briefed.  Docs. 122, 131, 139-142.  For reasons

26  that follow, the motion brought by Thusu and Verma will be granted in part and the motion

27  filed by the other Defendants will be denied.[1]

28  _____

         [1]Defendants' requests for oral argument are denied because the issues have been fully
    briefed and oral argument will not aid the Court's decision.  *See* Fed. R. Civ. P. 78(b);
    *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

1    **I.      Defendant Thusu's Rule 12(b)(5) Motion.**

2             Thusu seeks dismissal under Rule 12(b)(5) on the ground that he was not served with

3    process within the 120-day period of Rule 4(m).  Doc. 107 at 6.  That rule provides that the

4    court "must extend the time for service" upon a showing of "good cause."  But "even without

5    a showing of good cause, a district court may utilize its 'broad' discretion to extend the time

6    for service."  *United States v. 2,164 Watches*, 366 F.3d 767, 772 (9th Cir. 2004) (quoting

7    *In re Sheehan*, 253 F.3d 507, 513 (9th Cir. 2001)); *see* Fed. R. Civ. P. 4 advisory comm.

8    note, 1993 am. (Rule 4 "authorizes the court to relieve a plaintiff of the consequences of an

9    application of [subdivision (m)] even if there is no good cause shown").  Given the breadth

10   of discretion afforded under Rule 4(m), this Circuit has found it unnecessary to articulate a

11   "specific test" that a court must apply before extending the time for service.  *In re Sheehan*,

12   253 F.3d at 513.  Factors the court may consider include "'statute of limitations bar,

13   prejudice to the defendant, actual notice of a lawsuit, and eventual service.'"  *Efaw v.*

14   *Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007) (citation omitted).

15           This is not a case where the plaintiff made no effort to serve process on a single

16   defendant.   The complaint asserts claims against more than 50 defendants residing

17   throughout the country.  Many defendants have been served within the 120-day period.

18   Plaintiff made a timely attempt to serve Thusu.  When that proved unsuccessful due to an

19   incorrect address (*see* Doc. 122-1 at 2), Plaintiff hired a process server to perform

20   "skip trace" searches to locate a valid address (*id.* at 4-6).  Thusu was served within days

21   after his correct address was found.  *Id.* at 6-8.  He has identified no specific prejudice

22   resulting from the delay in service.  While it appears that Plaintiff's counsel could have been

23   more diligent in effecting service of process in this case, the Court will exercise its discretion

24   to extend the period for service of process on Thusu through August 11, 2010.  *See Mann v.*

25   *Am. Airlines*, 324 F.3d 1088, 1090 (9th Cir. 2003) ("Rule 4(m) explicitly permits a district

26   court to grant an extension of time to serve the complaint *after* [the] 120-day period.").  The

27   motion to dismiss under Rule 12(b)(5) will be denied.

28   / / /

- 2 -

1    **II.     Rule 12(b)(6) Standard.**

2         When analyzing a complaint for failure to state a claim to relief under Rule 12(b)(6),

3    the well-pled factual allegations "'are taken as true and construed in the light most favorable

4    to the nonmoving party.'" *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) (citation

5    omitted).   Legal conclusions couched as factual allegations "are not entitled to the

6    assumption of truth," *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009), and therefore are

7    "'insufficient to defeat a motion to dismiss for failure to state a claim,'" *In re Cutera Sec.*

8    *Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010) (citation omitted).  To avoid a Rule 12(b)(6)

9    dismissal, the complaint must plead "enough facts to state a claim to relief that is plausible

10   on its face."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   This plausibility

11   standard "is not akin to a 'probability requirement,' but it asks for more than a sheer

12   possibility that a defendant has acted unlawfully."   *Iqbal*, 129 S. Ct. at 1949 (quoting

13   *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer

14   more than the mere possibility of misconduct, the complaint has alleged – but it has not

15   'show[n]' – 'that the pleader is entitled to relief.'"   *Id.* at 1950 (quoting Fed. R. Civ. P.

16   8(a)(2)).

17        Plaintiff asserts that a complaint may be dismissed for failure to state a claim "only if

18   it is clear that 'no relief could be granted under any set of facts[.]'" Docs. 122 at 6, 140 at 3

19   (citations omitted).  This rule originated in *Conley v. Gibson*, 355 U.S. 41 (1957), where the

20   Supreme Court stated that a complaint should not be dismissed "unless it appears beyond

21   doubt that the plaintiff can prove no set of facts in support of his claim which would entitle

22   him to relief."  355 U.S. at 45-46.  But *Twombly* put to rest the "no set of facts" language

23   contained in *Conley* and its progeny.  550 U.S. at 561-63.  That phrase is now "best forgotten

24   as an incomplete, negative gloss on an accepted pleading standard:  *once a claim has been*

25   *stated adequately*, it may be supported by showing any set of facts consistent with the

26   allegations of the complaint."  *Id.* at 563 (emphasis added).

27   **III.    Breach of Contract and the Covenant of Good Faith and Fair Dealing.**

28        Count one of the complaint asserts a breach of contract claim against the "Franchisee

- 3 -

1  Defendants," that is, all Defendants except Douglas Keverline and Lisa Vanbockern.  Doc. 1

2  ¶¶ 2, 73-82.  Count two asserts a related claim for breach of the implied covenant of good

3  faith and fair dealing.  *Id.* ¶¶ 83-88.[2]

4  To state a valid breach of contract claim, the complaint must allege the existence of

5  a contract between the plaintiff and the defendant, a specific breach of the contract by the

6  defendant, and resulting damage to the plaintiff.  *See Coleman v. Watts*, 87 F. Supp. 2d 944,

7  955 (D. Ariz. 1998) (citing  *Clark v. Compania Ganadera de Cananea, S.A.*, 387 P.2d 235,

8  237 (Ariz. 1963)).  "The terms of the contract must be established with sufficient specificity

9  that the obligations involved may be ascertained."  *Id.* (citing *Savoca Masonry Co. v. Homes*

10  *& Son Constr. Co.*, 542 P.2d 817, 819 (Ariz. 1975)).  The covenant of good faith and fair

11  dealing, implied in every contract, requires each party to act so as not to "'impair the right

12  of the other to receive the benefits which flow from their agreement or contractual

13  relationship.'" *Meleki v. Desert Palms Prof'l Props., LLC*, 214 P.3d 415, 421 (Ariz. Ct. App.

14  2009) (citation omitted).  The Court concludes that the complaint contains enough well-pled

15  factual allegations to state plausible claims for breach of contract and breach of the covenant

16  of good faith and fair dealing.

17  The complaint sets forth specific terms of the standard Clinic Franchise Agreement

18  ("CFA") (*id.* ¶¶ 32-36, 44-47, 52-63), identifies the respective dates when CFAs were

19  entered into by the parties (*id.* ¶ 31(c), (g), (h)), and alleges that "Franchisees have not paid

20  accrued and accruing Royalty Fees, Advertising Fees and Contributions, product purchase

21  payments and other amounts calculated and due under the CFA in the following amounts,

22  including the CFA provision that increases the applicable Royalty Fee to 15% of

23  Franchisees' revenue in the event of Franchisees' default of the CFA" (*id.* ¶ 37).  The

24  complaint goes on to allege the duration of the continuing breach and the specific amount

25  owed by Defendants Juan Castillo-Plaza, Sixta Castillo, and Michelle Barnes (24 months and

26  $228,600, *see id.* ¶ 37(c)), and by Defendants David Minozzi, Amir Hussain (Amir

27

28  [2]Although not an independent cause of action, "count six" is related to the contract claims as it is a request for an award of attorneys' fees, costs, and interest under the franchise agreements.  *Id.* ¶¶ 116-18.

1  Farooqui), Irum Hussain, and Susan Feng (24 months and $228,600, *see id.* ¶ 37(g)).  The

2  complaint further alleges that the CFAs were terminated effective March 2009 (*id.* ¶ 49), and

3  each Franchisee Defendant continues to violate specific post-termination obligations,

4  including offering the same skin care services they formerly offered as a DermaCare

5  franchisee, operating and advertising the competing businesse using DermaCare marks and

6  proprietary information, and refusing to return DermaCare materials and products (*id.* ¶¶

7  64-72).

8       The complaint contains well-pled facts sufficient to plead a plausible claim for breach

9  of contract, that is, the existence of a contract, a breach of specific contractual obligations,

10  and resulting damages.  Those factual allegations, when accepted as true and construed in

11  favor of Plaintiff, *see Cousins*, 568 F.3d at 1067, show that Defendants have breached the

12  covenant of good faith and fair dealing.  *See also Wells Fargo Bank v. Ariz. Laborers,*

13  *Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 29 (Ariz. 2002)

14  (finding that a party may breach its duty of good faith without actually breaching an express

15  covenant in the contract).  The motions to dismiss will be denied in this regard.

16       Defendants Thusu and Verma note, correctly, that the complaint alleges that the

17  amount of damages they caused is "[t]o be proven at trial" (*id.* ¶ 37(h)).  But they present no

18  legal authority or argument that damages for breach of contract and breach of the implied

19  covenant must be pled with particularity.

20       Citing to the Restatement (Second) of Contracts and a leading treatise, Defendants

21  contend that Plaintiff's allegation that it terminated the franchise agreement (Doc. 1 ¶ 49)

22  constitutes a "prior breach" and a complete defense to the contract claims.  Docs. 107, 134

23  at 10.  But the complaint clearly asserts that Plaintiff was unable to perform its contractual

24  obligations, and ultimately forced into bankruptcy, due to misconduct on the part of

25  Defendants.  Moreover, the issue of which breach occurred first is a factual question to be

26  resolved at summary judgment or trial.

27  **IV.    Misappropriation of Trade Secrets.**

28       The complaint contains sufficient facts to state a plausible claim for misappropriation

1    of trade secrets (count three). *See* A.R.S. § 44-401; *Sunshine Media Group, Inc. v. Goldberg*,

2    No. CV-10-0761-PHX-DGC, 2010 WL 2899081, at \*5 (D. Ariz. July 22, 2010).   The

3    complaint describes Plaintiff's proprietary and confidential information concerning the

4    operation of DermaCare facilities, including manuals, training materials, and marketing

5    information. *Id.* ¶¶ 40-43.  This information covers "virtually every aspect to operate and

6    manage DermaCare clinics and master regional franchises, including pre-opening items,

7    advertising and marketing, use of Dermacare's treatments and products, management, human

8    resources and payroll, accounting and financial reporting, front office administration,

9    computer and software utilization, and risk management." *Id.* ¶ 41.  The DermaCare manuals

10   and other materials are alleged to constitute "trade secrets" as they have independent

11   economic value from not being generally known to, and not being readily ascertainable by

12   proper means by, other persons who can obtain economic value from their use.  *Id.* ¶ 90.

13   While this allegation may be a legal conclusion not entitled to a presumption of truth, *see*

14   *Iqbal*, 129 S. Ct. at 1950, Defendants expressly agreed in the CFA that DermaCare's

15   confidential information is "proprietary [and] involves trade secrets of the company." *Id.* ¶¶

16   45, 92.  Plaintiff asserts that it "has made and continues to make reasonable efforts to

17   maintain the secrecy of these items." *Id.* ¶ 90.  Plaintiffs plead, upon information and belief,

18   that after termination of the CFAs, and without consent (*id.* ¶ 93), Defendant "Franchisees

19   are operating their competitive business[es] using DermaCare's marks, manuals, training

20   materials and other confidential and proprietary information" (*id.* ¶ 66).

21          In light of these well-pled factual allegations, the motions to dismiss will be denied

22   with respect to misappropriation claim asserted in count three.

23          The misappropriation claims fails, Defendants contend, because Plaintiff's bankruptcy

24   "obviously" has resulted in "a complete failure to protect DermaCare's trade secrets[.]"

25   Docs. 107, 134 at 12.  The facts alleged in the complaint show otherwise. *See* Doc. 1 ¶¶ 45,

26   56, 90.  Defendants claim that the alleged misappropriation itself shows a failure to protect

27   trade secrets (Docs. 107, 134 at 12), but cite no legal authority in support of this novel

28   proposition.

1 **V.      Trademark and Service Mark Infringement and Unfair Competition.**

2          Count four of the complaint asserts trademark and service mark infringement claims

3 under the Lanham Act, 15 U.S.C. § 1114.  Doc. 1 ¶¶ 99-107.  That section of the Lanham Act

4 provides that any person who, without consent of the trademark registrant, uses in commerce

5 any "copy, or colorable imitation of a registered mark in connection with the sale, offering

6 for sale, distribution, or advertising of any goods or services," in a manner "likely to cause

7 confusion" with the registrant's goods and services, "shall be liable in a civil action[.]"

8 15 U.S.C. § 1114(1).  Count five (Doc. 1 ¶¶ 108-15) asserts an unfair competition claim

9 under 15 U.S.C. § 1125(a), which makes it unlawful for any person who, in connection with

10 any goods or services, uses in commerce any "word, term, name, symbol, or device, . . . or

11 any false designation of origin," in a manner likely to cause confusion or to deceive "as to

12 the affiliation, connection, or association of such person to another person, or as to the origin,

13 sponsorship, or approval of his or her goods or services[.]"

14          Counts four and five fail to state a claim to relief, Defendants contend, because the

15 complaint does not allege when or how Plaintiff's marks were used.  Docs. 107, 134 at 12.

16 The Court does not agree.

17          As to "when," the complaint alleges that Defendants have continued to use the marks

18 since termination of the franchise agreements in March 2009.  Doc. 1 ¶ 49.  With respect to

19 "how," the complaint alleges that Defendants have used the marks in connection with "the

20 same laser skin care services and skin care treatments that they formerly offered as a

21 DermaCare franchisee, using the same or similar names or marks  . . . at the same locations

22 and facilities" (*id.* ¶ 64), and have "continued to advertise and market laser skin care services

23 using DermaCare's marks, improperly referencing their clinic as a current or former

24 DermaCare Laser and Skin Care Clinic, and using DermaCare's logo" (*id.* ¶ 65).  These

25 allegations are sufficient to give Defendants "fair notice of what the claim is and the grounds

26 upon which it rests." *Twombly*, 500 U.S. at 555.  Plaintiff has met its "burden of pleading

27 a claim for relief that is plausible[.]" *al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009);

28 *see also PepsiCo, Inc. v. Los Potros Distribution Ctr., LLC*, No. CV-07-2425-PHX-DGC,

1    at *2 (D. Ariz. Apr. 7, 2008) (complaint sufficiently stated federal trademark and unfair

2    competition claims).

3         Relying on settlement agreements entered into between Plaintiff and other former

4    franchisees, Defendants argue that the trademark claim fails because Plaintiff has entered into

5    "naked licenses."   Docs. 107, 134 at 12-13.   Defendants urge the Court to consider this

6    extrinsic evidence on the ground that the settlements must be approved by the bankruptcy

7    court.  The Court finds that the issue of whether Plaintiff has entered into "naked licenses"

8    is best resolved on a full record at the summary judgment stage.  The Court will not consider

9    the settlement agreements (Doc. 107-1) in ruling on the Rule 12(b)(6) motions.

10   **VI.    Tortious Interference with Contract and Civil Conspiracy.**

11        Plaintiff asserts a claim for tortious interference with contract in count seven of the

12   complaint (Doc. 1 ¶¶ 119-124), and a related civil conspiracy claim in count eight (*id.* ¶¶

13   125-28).  The elements of a tortious interference claim are the existence of a valid contractual

14   relationship, knowledge of the relationship on the part of the interferor, and intentional and

15   improper interference causing damage to the relationship.  *See Antwerp Diamond Exch. of*

16   *Am., Inc. v. Better Bus. Bur. of Maricopa County, Inc.*, 637 P.2d 733, 740 (Ariz. 1981);

17   *Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1043 (Ariz. 1985).  Because a party

18   "cannot be held liable in tort for intentional interference with its own contract," *Wells Fargo*,

19   38 P.3d at 31 n.19, count seven claims that Defendants have interfered with one another's

20   contracts.  For a civil conspiracy to occur, "two or more people must agree to accomplish an

21   unlawful purpose or to accomplish a lawful object by unlawful means, causing damages."

22   *Rowland v. Union Hills Country Club*, 757 P.2d 105, 110 (Ariz. 1988).

23        Defendants Thusu and Verma argue that the complaint contains only conclusory

24   allegations of tortious interference and conspiracy.  Doc. 107 at 13-16.  They are correct.

25        The complaint alleges that on or about January 16, 2007, a self-selected group of

26   franchisees, including Defendants Thusu and Verma (but not the other moving Defendants),

27   "discussed, formulated and set in motion a designed plan to jointly stop paying to DermaCare

28   the Royalty and other fees and cost accruing under their respective Clinical Franchise

1  Agreements, to otherwise stop performing under their Clinical Franchise Agreements, and

2  to encourage all the other Defendants to [do the same]." Doc. 1 ¶ 3. The "Conspiring

3  Defendants" are alleged to have caused "the creation, implementation and prosecution of an

4  anonymous internet blog, full of hateful, vindictive and untruthful statements." *Id.* at 5.

5  These vague allegations lack the "heft" under *Twombly* to permit the Court to infer

6  more than the mere possibility of a conspiratorial agreement to tortiously interfere with

7  franchise agreements and commit other wrongs. 550 U.S. at 557. The complaint does not

8  provide sufficient details of the alleged agreement or the anonymous blog. Nor does it

9  describe the factual basis for each Defendant's liability. Instead, the complaint's allegations

10  "lump all [D]efendants together, without giving any notice of what the individuals' roles in

11  the conspiracy were." *Tango Music, L.L.C. v. Deadquick Music, Inc.*, No. 99 C 7331, 2001

12  WL 897606, at *6 (N.D. Ill. Aug. 9, 2001). It is one thing to allege, in a collective manner,

13  that Defendants breached their respective standard franchise agreements by not paying

14  royalties and failing to comply with the same, specific post-termination obligations. It is

15  something quite different to refer to a group of Defendants collectively as "Conspiring

16  Defendants" and allege they took part in a vast conspiracy "to destroy the DermaCare

17  franchise system, to breach the franchise agreements, to interfere with the franchise contracts,

18  to violate the trade secrets and to violate trademark law." Doc. 1 ¶ 125. The allegations that

19  the Conspiring Defendants "solicited, encouraged, aided and abetted each Franchisee to

20  operate and to compete unfairly, fraudulently and deceitfully and to" violate the Arizona

21  Trade Secrets Act and similar acts (*id.* ¶ 94), violate the Lanham Act (*id.* ¶ 105), and

22  wrongfully interfere with relevant contracts (*id.* ¶ 121), are not entitled to a presumption of

23  truth as they are mere legal conclusions couched as factual allegations. *See Iqbal*, 129 S. Ct.

24  at 1950.

25  Because the complaint's factual allegations are not "enough to raise a right to relief

26  above the speculative level," *Twombly*, 550 U.S. at 555, the complaint "has alleged – but it

27  has not 'shown' – 'that [Plaintiff] is entitled to relief'" for tortious interference and

28  conspiracy, *Iqbal*, 129 S. Ct. at 1950. The motion to dismiss (Doc. 107) will be granted as

1  to counts seven and eight.

2  **VII.   Punitive Damages.**

3         Plaintiff seeks an award of punitive damages (Doc. 1 at 30), alleging in connection

4  with its claim for breach of the covenant of good faith that the conduct of Defendants "was

5  done either with the intent to harm DermaCare, or with reckless disregard of whether it

6  would harm DermaCare such that the conduct was done with an 'evil mind' as defined by

7  Arizona law" (*id.* ¶ 88). Punitive damages are not recoverable as a matter of law, Defendants

8  Thusu and Verma argue, because the claim for breach of the covenant of good faith sounds

9  in contract, not tort, and punitive damages are not recoverable on contract claims.  Doc. 107

10  at 16-17.  Plaintiff does not address this argument in its response, asserting only that its "tort

11  claims against Defendant are properly pled, and the allegations support a request for punitive

12  damages."  Doc. 122 at 18.

13         The tort claims for interference with contract and conspiracy will be dismissed.  The

14  Court agrees with Defendant that punitive damages are not recoverable on the contract-based

15  claim for breach of the covenant of good faith.  The motion to dismiss (Doc. 107) will be

16  granted with respect to the request for an award of punitive damages (Doc. 1 ¶ 88, at 30).

17         **IT IS ORDERED:**

18  1.     Defendant Kudlip Thusu's motion to dismiss pursuant to Rule 12(b)(5)

19         (Doc. 107) is **denied**.  The time period for service of process on Defendant

20         Thusu under Rule 4(m) is extended to August 11, 2010.

21  2.     The motion to dismiss under Rule 12(b)(6) filed by Defendants Kudlip Thusu

22         and Defendant Raman Verma (Docs. 107, 133) is **granted in part and denied**

23         **in part**.  The motion is granted with respect to the claim for tortious

24         interference with contract (count seven), the claim for civil conspiracy (count

25         eight), and the request for punitive damages.  The motion is denied with

26         respect to the claims for breach of contract (count one), breach of the covenant

27         of good faith and fair dealing (count two), misappropriation of trade secrets

28         (count three), trademark and service mark infringement (count four), and

- 10 -

1    unfair competition (count five).

2    3    The motion to dismiss filed by Defendants Susan Feng, Amir Hussain (Amir

3         Farooqui), Irum Hussain, David Minozzi, Juan Castillo-Plaza, Sixta Castillo,

4         and Michelle Barnes (Doc. 134) is **denied**.

5    DATED this 14th day of December, 2010.

David G. Campbell
United States District Judge