**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DLC Dermacare, LLC, an Arizona limited liability company, | No. CV10-0333 PHX DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Sixta Castillo, R.N., et al., | |
| Defendants. | |

In an order dated July 23, 2012, the Court gave Plaintiff DLC Dermacare, LLC one final opportunity to retain new counsel. The Court set a deadline of August 17, 2012, and specifically warned Plaintiff that this case would be dismissed if new counsel was not retained. Doc. 240. The deadline passed without retention of new counsel. Carl Mudd, the sole owner of Plaintiff and a non-lawyer, has filed a motion to be substituted as the plaintiff in this case. Doc. 244. He has also filed a motion for disqualification of defense counsel. Doc. 249. For the reasons that follow, the Court will dismiss this case and deny Mr. Mudd's motions.

**I.  Background.**

This case has had a long and difficult history. Plaintiff DLC Dermacare, LLC ("Dermacare") filed this action on December 17, 2010. Dermacare sued numerous parties alleged to be franchisees of Plaintiff or spouses of franchisees. For the first year after the case was commenced, the docket was consumed with service entries, requests

for extension, requests for default, motions to set aside default, and other procedural skirmishing. Motions to dismiss were filed and granted in part. Following the resolution of these procedural issues, the Court entered a case management order that set a discovery deadline of December 16, 2011. Doc. 174. The Court also set a deadline for dispositive motions of January 27, 2012. *Id*. The Court explicitly cautioned the parties, including Dermacare, that it intended to enforce this schedule: "The parties are advised that the Court intends to enforce the deadlines set forth in this Order, and should plan their litigation activities accordingly." Doc. 174, ¶ 9.

By the time the discovery deadline arrived, Dermacare was on its third set of lawyers. Dermacare's initial attorneys were permitted to withdraw in February of 2011. Doc. 156. Its second set was terminated in January of 2012. Doc. 214. Dermacare never sought an extension of the discovery or motion deadlines.

When the motion deadline passed without the filing of any dispositive motions, the Court set a final pretrial conference. Doc. 218. The Court specifically stated that Dermacare, as Plaintiff, was obligated to initiate the process of preparing a proposed final pretrial order. *Id*. at 2. The order also stated that "[f]ull and complete compliance with this order shall be required by the Court." *Id*. at 4.

The final pretrial conference was held on June 5, 2012. Despite the Court's clear order, Dermacare took no steps to prepare a proposed final pretrial order or otherwise to prepare for the final pretrial conference. Doc. 229. Instead, four days before the conference, the Court was informed for the first time that Dermacare had been in bankruptcy since 2008. The notice was provided by a bankruptcy trustee. Doc. 225. The trustee informed the Court that Dermacare's bankruptcy had been converted from a Chapter 11 to a Chapter 7 proceeding in January of 2012 and that the trustee had been appointed to manage Dermacare's estate. The trustee further advised the Court that he had been informed of this litigation and recently had reviewed the case. *Id*. The trustee had determined "that the cause of action is burdensome and/or of inconsequential value to the estate and [he] will not be pursuing the litigation." *Id*.

Dermacare's third set of lawyers also filed a motion to withdraw. Doc. 220. The purported reason was the fact that Dermacare was in a Chapter 7 bankruptcy proceeding, which had been true for more than six months without disclosure to the Court. Doc. 220.

At the final pretrial conference on June 5, 2012, the Court noted that Dermacare had taken no steps to prepare for the conference as required by the Court. No final pretrial order had been proposed, no witnesses identified, no exhibits identified, and no issues for trial identified. Defense counsel for the remaining defendants in the case also advised the Court that Dermacare had never conducted any discovery regarding his clients. The bankruptcy trustee, appearing through counsel, confirmed his intention to abandon the claims at issue in the case. Carl Mudd, the owner and CEO of Dermacare, asked the Court for 30 more days to retain new counsel. The Court gave Dermacare 27 days, until July 2, 2012, to identify new counsel and to advise the Court of any legal basis for arguing that claims abandoned by the trustee could be asserted by Dermacare. Another hearing was set for July 19, 2012. Doc. 229.

Rather than identifying new counsel as required by July 2, 2012, Dermacare's then-current counsel filed a notice on that date simply stating that Dermacare "is currently seeking new counsel." Doc. 232. No motion to extend the July 2 deadline was filed. On July 18, 2012, Carl Mudd, who had been told that he could not represent Dermacare in this case, filed a motion asking the Court to continue the July 19, 2012 hearing. Mr. Mudd professed confusion between himself and current counsel as to whether new counsel would be needed. Doc. 238.

The hearing proceeded as scheduled on July 19, 2012. Mr. Mudd again asked for additional time to find a fourth set of attorneys. The Court noted that more than 30 days had elapsed since the June 5 final pretrial conference, and yet Dermacare had not retained new counsel. The Court took matters under advisement and entered an order on July 23, 2012. Doc. 240. Giving Dermacare the benefit of the doubt, the Court declined to dismiss the case for lack of prosecution at that time. *Id*. The Court granted Dermacare's current counsel's motion to withdraw, and then set the following firm deadline:

>Plaintiff DLC Dermacare, LLC shall have until **noon on August 17, 2012,** to retain new counsel. If new counsel fails formally to appear for Plaintiff by that date and time, this action will be dismissed because Plaintiff has had three different sets of counsel in this case, has had ample opportunity to locate new counsel, and a limited liability company cannot appear in federal court without counsel.

Doc. 240 at 1-2 (emphasis in original).

Despite this clear warning, Dermacare did not retain new counsel by August 17, 2012. Instead, Mr. Mudd filed a cryptic motion the day before the deadline suggesting that he should be substituted as plaintiff in the case. The motion did not assert that the claims of Dermacare had been assigned to Mr. Mudd, but merely stated that the claims had reverted to him "pursuant to Title 29 of the Arizona Revised Statutes." Doc. 244. No specific statute was cited.

## II.     Dismissal For Lack Of Prosecution.

It is well established that only licensed attorneys may represent a corporation in federal court. *See Rowland v. Cal. Men's Colony, Unit II, Men's Advisory Council*, 506 U.S. 194, 201-02 (1993) ("It has been the law for the better part of two centuries . . . that a corporation may appear in federal court only through licensed counsel.") (citing *Osborn v. President of Bank of U.S.*, 9 Wheat. 738, 829 (1824)). This rule applies to limited liability companies and other business entities. *See Rowland,* 507 U.S. at 202 ("As the courts have recognized, the rationale for that rule applies equally to all artificial entities."); *Lotanzio v. COMTA*, 481 F.3d 137, 140 (2d Cir. 2007) (holding that LLC could appear in federal court only through licensed attorney); *D. Beam Ltd. Partnership v. Roller Derby Skates, Inc.*, 366 F.3d 972, 973-74 (9th Cir. 2004) ("It is a long standing rule that 'corporations and other unincorporated associations must appear in court through an attorney'") (alteration and citation omitted); *United States v. High Country Broad. Co.,* 3 F.3d 1244, 1245 (9th Cir. 1993) (holding that a corporation's president and sole shareholder could not make an "end run around" the counsel requirement by intervening pro se rather than retaining counsel to represent the corporation); *Gilley v.*

*Shoffner,* 345 F. Supp. 2d 563, 566-67 (M.D.N.C. 2004) (holding that LLC must appear through counsel).

Dermacare has been represented by three different sets of lawyers in this case. At the final pretrial conference on June 5, 2012, the Court afforded Dermacare 27 additional days to retain a fourth set of lawyers. Doc. 225. This deadline passed without the appearance of new counsel or a motion to continue the deadline. By the hearing on July 19, 2012, more than six weeks later, Dermacare still had not retained new counsel. The Court nonetheless afforded Dermacare one final opportunity to retain new counsel. As noted above, the Court explicitly warned Dermacare that this case would be dismissed if new counsel failed to appear by the deadline. Doc. 240 at 2.

Despite ample time and explicit warning, Dermacare has not retained new counsel. As a result, the Court will dismiss this action. Dermacare's failure constitutes a clear lack of prosecution.

There are additional grounds to dismiss this case for lack of prosecution. Dermacare has conducted no discovery of the remaining defendants. When ordered to prepare for the final pretrial conference, Dermacare did nothing. Dermacare prosecuted this action while in bankruptcy, never advising the Court that it was in bankruptcy. Dermacare continued to act as the plaintiff in this case for six months after its claims had been assigned to the bankruptcy trustee. If the Court were to permit Dermacare to proceed – something it could not do without counsel – the next step in the litigation would be trial. Discovery would not be reopened. The Court's case management order explicitly stated that the discovery deadlines in this case were real. Doc. 174, ¶ 9. Having conducted no discovery, the Court doubts that Dermacare could proceed to trial even if it rightfully holds the claims that have been abandoned by the trustee and even if new counsel were to appear unexpectedly. This case has been pending for more than 32 months, and yet Dermacare has taken little or no action to prosecute it.

Under Rule 41(b), the Court can dismiss a case "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order[.]" Fed. R. Civ. P. 41(b). A court may

- 5 -

dismiss an action under this rule *sua sponte*. *Link v. Wabash R. Co.,* 370 U.S. 626, 630-31 (1962); *Hells Canyon Preservation Council v. U.S. Forest Service*, 403 F.3d 683, 689 (9th Cir. 2005). In determining whether a plaintiff's failure to prosecute warrants dismissal under Rule 41(b), a district court must weigh five factors: (1) the public's interest in expeditious resolution of litigation; (2) the Court's need to manage its docket; (3) the risk of prejudice to Defendants; (4) the public policy favoring disposition of cases on the merits; and (5) the availability of less drastic sanctions. *Carey v. King*, 856 F.2d 1439, 1440 (9th Cir. 1988).

The first three factors favor dismissal. Dermacare's actions have prevented expeditious resolution of this litigation and have interfered with the Court's ability to manage its docket. Defendants, who have been forced to endure the threat and procedural skirmishing of this litigation for more almost three years, plainly would be prejudiced by further delay.

The Court also concludes that the fifth factor – the availability of less drastic sanctions – favors dismissal. Plaintiff has been given several opportunities to retain counsel and resume the litigation. Indeed, the Court previously declined to dismiss this case for lack of prosecution and afforded Plaintiff one more opportunity to retain counsel and move forward. None of this succeeded. Plaintiff remains without counsel today and clearly is unable to proceed to trial.

The fourth factor always weighs against dismissal; public policy favors resolution of cases on the merits. But when a plaintiff fails to retain counsel, fails to comply with court orders, and fails to prosecute the action, the other four considerations outweigh this public policy. The Court simply cannot be held hostage by parties who refuse to comply with orders and proceed with their cases. The Court will dismiss this case for lack of prosecution.

**III.     Motion To Substitute.**

As noted, Mr. Mudd filed a cryptic motion suggesting that he be substituted in place of Dermacare as the plaintiff in this case. Doc. 244. The motion does not state that

Dermacare's claims have been assigned to him, nor does it cite any legal authority under which he can prosecute those claims. *Id.* The motion clearly fails to provide a basis on which Mr. Mudd can be substituted for Dermacare. Defendants noted these shortcomings in their response to the motion. Doc. 247, 248. In reply, Mr. Mudd filed a memorandum stating for the first time that Dermacare had assigned claims to him. Mr. Mudd attached to the reply a one-sentence document, dated September 6, 2012, in which he, as President, CEO, and sole shareholder of Dermacare, purported to transfer "the assets of all franchisee litigation claims" to himself. Doc. 250 at 5.

The Court will deny the motion to substitute for two reasons.

First, the motion provides no legal basis for concluding that Mr. Mudd is entitled to appear as a plaintiff in this case. Although Mr. Mudd attempts to remedy this shortcoming in his reply memorandum, the Court will not consider arguments raised for the first time in a reply brief. *See, e.g., Delgadillo v. Woodford,* 527 F.3d 919, 930 n.4 (9th Cir. 2008); *Lantini v. Cal. Ctr. For the Arts, Escondido*, 370 F.3d 837, 843 n.6 (9th Cir. 2004); *Bach v. Forever Living Products U.S., Inc.*, 473 F.Supp. 2d 1110, 1122 n.6 (W.D. Wash. 2007). In addition, the purported assignment was not executed until weeks after the Court's deadline for the final appearance of new counsel and had not occurred when Mr. Mudd moved to be substituted as Plaintiff. Mr. Mudd's eleventh-hour attempt to assign the claims does not remedy Dermacare's numerous shortcomings in this case.

Second, Rule 25(c) states that "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action, or joined with the original party." Fed. R. Civ. P. 25(c). Whether to grant substitution is within the Court's discretion. *See Associacion de Empleados de Area Canalera (ASEDIC) v. Panama Canal Com'n,* 453 F.3d 1309, 1313 (11th Cir. 2006); *Organic Cow, LLC v. Center for New England Compact Research*, 335 F.3d 66, 71 (2nd Cir. 2003); *In re Bernal,* 207 F.3d 595, 599 (9th Cir. 2000); *Luxliner P.L. Export, Co. v. RDI/Luxliner, Inc.,* 13 F.3d 69, 71-72 (3d Cir. 1993) (citing cases).

The Court exercises its discretion to deny substitution in this case. The Court does so because it appears that the substitution of Mr. Mudd is nothing more an attempted end-run around the Court's repeated requirements that Dermacare appear through counsel. *Cf. High Country Broad. Co.,* 3 F.3d 1245 (holding that a corporation's president and sole shareholder could not make an "end run around" the counsel requirement by intervening pro se rather than retaining counsel to represent the corporation). Moreover, this case has been pending for almost three years and yet is not prepared for trial. Permitting *pro se* Mr. Mudd to intervene at this late date would unduly prolong and confuse this already overdrawn litigation. Furthermore, Mr. Mudd failed repeatedly to locate new counsel, failed to advise the Court that Dermacare was in bankruptcy from the outset of the case, failed to advise the Court that a bankruptcy trustee had been appointed, and repeatedly attempted to appear for Dermacare despite the Court's clear instruction that he could not do so. The Court has no confidence in Mr. Mudd's willingness or ability to abide by the Court's orders and rules.

The Court also has good reason to conclude that Mr. Mudd's substitution would significantly increase the hostility and complexity – and therefore the cost and duration – of this lawsuit. On August 27, 2012 (eleven days after he moved to be substituted as Plaintiff), Mr. Mudd wrote a threatening letter to defense counsel. Apparently presuming that he would be permitted to become the pro se plaintiff in this case, Mr. Mudd stated his intent to file, "at a minimum, a motion to have you disqualified as counsel as being a witness[.]" Doc. 247-1. Mr. Mudd threatened to have unfavorable information concerning defense counsel published in the press: "It's not pretty, and we both know it . . . Maybe we can get it published in the business journal." *Id*. Mr. Mudd asserted "a complete lack of fear," told defense counsel that he planned to cross-examine all of counsel's clients "and you," and warned that the coming problems in this case "may haunt you forever." *Id*. After making these threats, Mr. Mudd declared: "I enjoy this." *Id*. He closed the letter to opposing counsel by saying "[y]ou have a lot more to lose than I do, mano y mano . . . pauta." The word at the end of his Spanish phrase likely was

intended to be "puta," a derogatory Spanish word for prostitute. Sure enough, as threatened, Mr. Mudd filed a motion to disqualify defense counsel 10 days later. Doc. 249. He did so, again, in defiance of the Court's numerous instructions that he cannot appear on behalf of Dermacare in this case.

The Court finds that granting Mr. Mudd's requested substitution would unduly prolong this already old case, significantly complicate the litigation, and introduce a level of animosity and gamesmanship that is entirely inappropriate in federal court. The motion for substitution will be denied.

**IT IS ORDERED:**

1. This action is dismissed for lack of prosecution.
2. Mr. Mudd's motion for substitution (Doc. 244) is **denied**.
3. The motion to disqualify counsel (Doc. 249) is **denied** as moot and because Dermacare cannot appear through a non-lawyer in this Court.

Dated this 8th day of November, 2012.

_____
David G. Campbell
United States District Judge